Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good morning. All right. Today we've had three cases for oral argument. The first case we'll hear is number 20-30508, Gomez v. Galman. Mr. Adams, you're up, please. Who has the honor of representing Mr. Jorge Gomez, United States military veteran who served this country during the Iraq war. Mr. Gomez was honorably discharged in October of 2014 and thereafter returned to civilian life where he would settle into a New Orleans community along with his mother. Mr. Gomez is a proud American of Honduras descent who, like many, would sometimes wear fatigue print clothing while running errands and even to the local bars. In late July of 2018, Mr. Gomez had the great unfortune of running into two New Orleans police officers while wearing fatigue print. Although these officers were off duty, they used the powers and protection of the New Orleans police department to order Mr. Gomez to stop, senselessly beat him unconscious, effectuate an arrest, call for backup, and then be allowed to go home while Mr. Gomez was rushed to the hospital. The district court mistakenly found factual determinations that the defendant officers did not act under the color of law and made other improper factual determinations mainly because the defendant officers were not on duty during the assault. However, the facts taken as true and Mr. Gomez's plausibly plead admitted complaint show that the defendant officers acted under the color of law and further show that there was a link between defendant city's policies and the brazen conduct of the respond to all questions of the court and make argument. I'll now open the floor for questions to the court. Oh, well, don't worry. We'll stop you when we've got questions. It's your run. You keep going. Trust me. We're not bashful. Well, thank you, Your Honor. To be specific, there was a DOJ report that came out in 2018 and it was much more than just a report. Judge, it was a prediction. This report cited much of the problems with the police department's strategy of simply just hiring just to have numbers. To be specific, the DOJ report, as cited in an amended complaint, section 46, the DOJ report executive summary states that the NOPD officers too frequently use excessive force and conduct a little stop searches and arrests. The DOJ report specifically found and why it's important. Well, well, let me stop you there and I'll ask you, okay, you made your claim about color of law. You're very familiar with Monel and all the cases that go with that. So make your best case as to how you can prevail on the Monel. Judge, without having conducted discovery in this case, we believe that we have plausibly played enough to reach Monel. Specifically in the DOJ's report, they talk about the recruitment, the practices, the policies of hiring people on the brass just to fill out numbers. And this is the direct link in how we feel that Zoe met Monel. These defendant officers were on probation. They had two incidents of violence in their background leading up to this incident with ever being pulled off the street. And because of this, this brazenness, and because of not being held accountable, they were allowed to go on and assault Mr. Gomez the night that they assaulted Mr. Gomez. The date of the consent order was, I want to say 2011 or 2012, if I'm not mistaken. Is that not correct? No, judge, the consent order was 2018. It was actually issued in January of 2018, if I am correct. And the incidents with the defendant officers prior to Mr. Gomez took place after this was issued. The consent order itself was 2018? I want to make sure, judge, that I am citing correctly. The consent order that Judge Morgan is handling. I thought that was around 2012 or 2013, if I'm not mistaken. It was certainly before the current mayor's administration began. It was under Mayor Landrieu, if I'm not mistaken. And that was 2016, I believe. And judge, while you may be correct in that, there was an independent monitor review of that consent decree. Okay. And that's what you're referring to? That's what you're quoting from? I am, judge. And I apologize for that. Okay. Let me ask you about the consent order. It disregards the Monell claim. The consent order governs the selection and training of recruits, doesn't it? And again, maybe I'm mistaken, because you're more familiar with it than I am. But the original consent order, as signed by Judge Morgan at the inception, has provisions for training officers. It does, judge. It does. Well, how does it help your claim that the recruitment of officers, specifically these two individuals, regardless of what they've done right or wrong, if that was done under the auspices of a consent order, how does it help your Monell claim that the city would be liable if they complied with the consent order and these just happen to be two apples? Well, that's the thing, judge. We have no proof that they complied. In fact, in the alternative, the independent review suggests that they were not complying, which is why we feel before having a chance to conduct discovery, this is why we feel Mr. Gomez simply just wants to have his day in court to be able to support his claim. If the independent review did not just come out to come out. So we think that there is something there that supports this claim and this Monell claim. It is the practices and the policies of the city and not paying attention to who they are hiring that we believe caused the unconstitutional violations to Mr. Gomez. Feel free to come back to the Monell claim. I know you're going to cover that in more detail. I want to ask you about the the individual claim. How can you distinguish the that? Isn't that similar to the allegations against these two defendants? Well, judge, we believe that it's distinguishable because of this. There were no allegations at all that the officers gave the police officers in that case gave direct orders for the victim that they beat to stop. There was no allegations that the officers called for dispatch. And judge, I want to pause there because this simply wasn't just a call for dispatch. While Mr. Gomez was beat unconscious, turned on to his stomach, hand placed behind his back. Defendant officers called 9-1-1 and gave them a special code which identified themselves as officers. And in response, 9-1-1 put out a call saying officers in need. Judge, this is clearly distinguishable from Bustos. Let me make certain you have pled that in your complaint, amended complaint. Where can I find it in your I have your amended complaint here. Absolutely, judge. So because I agree with you that those are important facts. If they're relying on city policy, NOPD policy and equipment and so on and so forth, if they've used a code. So that's what I understood. The district judge's problem with the case was a shortcoming in the pleading. And judge, I want to point because I think that these were missed. So I want to point directly. So I apologize if I'm looking down often. So specifically, page 26, well numbers 26-27 of the amended complaint. Defendant officer Sutton called for backup and continuing to make the arrest. They identified themselves as police officers through dispatch. And that can be found on 26-27 all the way through 30. And we pled in an amended complaint, this fact which we thought was enough to overcome the motion to dismiss. We also go back to earlier in your complaints. You repeatedly talk about the officers acting like police officers. Can you flesh out exactly where you're going with that in terms of what we would see at trial? Well, good morning, Judge Holt. Yes. These are the seven things that neither I nor anyone else who is not an officer would be able to do. They ordered Mr. Gomez to stop and remain in the patio area. After the first initial beating, this attack took place inside a bar. The bartender knew Mr. Gomez and asked him to leave to get away from the situation. Mr. Gomez started to go out where he was ordered to be stopped and stay in the patio area where their first attack took place. Mr. Gomez was able to get up and leave this attack, get into his vehicle and start to drive away. He was disoriented at the time. So as he drove down the street, it happened to be in the same direction as the defendant officers. Defendant officers stood in front of his truck, ordered him out of his truck where they beat him again, which led to the arrest. I'll agree with you. That is a striking fact. That second aspect where he's already been beaten by these individuals and he's in his car and yet he somehow agrees to leave the car from the very people who attacked him. So I agree with you. That's a very striking fact in your favor. I'm just curious what made your client or what is it that made your client think that they were police officers because they weren't wearing uniforms, right? They were not wearing uniforms, your honor. And I'll say I'll preface my statement by saying this. Without us to conduct discovery, we'll never know exactly. I understand that you want to get to discovery, but obviously the complaint comes first. And I'm just curious what sort of supports this statement that they acted like police officers and therefore Mr. Gomez believed he was not free to leave. They weren't wearing uniforms. Did they announce themselves as officers? They never announced themselves as officers, but the commands in which these officers were given came from an authority type of position. Mr. Gomez having served in the military, we believe he listened because he thought that they were the authorities and he reasonably thought this. Right. And I agree with you that the fact that he's a former military and decorated military suggests he's not exactly a timid person. He's able to handle difficult, even violent situations. And yet he did not believe he was free to leave. So I agree that's a compelling fact for you. I guess I'm trying to sort of see if we could flesh that out at all, or if this is just something that has to be tried one way or the other, what was it that caused him to think that he was not free to leave? Because normally you'd leave from your attacker. It does judge. And I believe that it was the tone and tenor of these officers. And when they're in training judge, they are trained how to do multiple different things, de-escalation, how to stop a suspect and inform them that they're being stopped. This standing in front of the vehicle, telling them to stop and get out of his vehicle had to come from a understanding that these were the authorities and I better comply, even though I'm not sure. Okay. So just to be clear then you're not, there's no allegation that they've announced themselves as officers. It's more just the tone that they struck made your clients assume that they were officers. There are no allegations that these officers identified themselves. However, judge for this purpose of where we are now, they don't have to identify themselves as officers. They just have to act as if in conduct and do things under the color of law that normal citizens wouldn't be able to do. And none of us would be able to call the police and walk away. Scott free. Well, what cases do you have? The statement you just made, I think is a key to the way you've played the case. What's your authority and what cases do you have wherein there's a similar factual circumstance where there's an implication of some authority by law enforcement, but not an express, either a uniform or a marked vehicle or a badge or a sidearm or anything else that would, clearly identify the person as law enforcement. Well, thank you just for that question. And we, we rely on Smith versus Kuru. We believe that that cases is more analogous to the fact pattern here. There, the court noted that the definition of color of law is broad. The court stated that the color of law does not depend upon on or off duty status. The court recognized that the police officers who act purely for personal reasons may still act under the color of law. And in this case in specific, this case is distinguished by the district court, but it's factually similar to Gomez's case in that there was an off-duty officer acting under the color of law because he arrested the plaintiff in Kuru, just as was the case in Mr. Gomez's case. So what was the wording you've talked about the tone and so forth beyond the actual beating itself, what words said by the defendants did you plead to sort of undergird your tone and tender sort of implication of authority? We just, we, we just, how we view this case judge, and we pray the court views it as well as everything has to be considered together because there was no break from, from this incident. So from the initial ordering him to stop on the patio and he complied to getting into this vehicle and he didn't be in order to stop again. And then the call of the, the, the, the police 911, we believe that all of these facts must be considered together in a light most favorable to Mr. Gomez as pled in the complaint. The, the, the bar have a, I mean, some restaurants have, you know, a bouncer or off-duty police that served in security capacity in the bar, et cetera, et cetera. When he was stopped in the restaurant capacity, did he say, or think that, well, yeah, this is the restaurant. I mean, this is the off-duty police or something that he had violated some kind of rule within the restaurant. I mean, is anything to that effect, play it or say you follow. Just nothing to, to that point, judge in the complaint itself, the ordering of the stop, we, we, we hadn't had enough opportunity to find out if the ordering of a stop, if the way that they gestured, if they were trained this way, we haven't had the opportunity to find out to make that argument. So we planned what we could in this complaint. And to judge's point of, of why he would, would stop in the first place. I go back to, to Mr. Gomez's career in the service, which is why I opened up to the court with his background. He was trained as well to follow directions, to follow orders. And the defendant officers were trained on how to give directions and give orders. And that night they did that and beating Mr. Gomez unconscious. So you mentioned the Smith versus Caruth case, but isn't that a case where the officer it's off duty, but they actually use displayed the police badge and had handcuffs and brought out the handcuffs and issued Miranda warnings before the criminal activity or before the, uh, the, the illegal activity in that, in that case, it was judged, but, but also judge, it was a case that, that was in summary judgment, not at the motion to dismiss phase. And I, I understand, I believe, I appreciate deeply that this is, uh, the, the posture of this case is as favors you as well, but you understand the struggle here as we're trying to figure out what distinguishes this from a private criminal action, which, you know, officers off duty might very well commit, uh, as, as this case certainly suggests, that wouldn't necessarily rise to color of law in 1983 case, what makes it a use of state force case? I think, you know, there, there's a world in which you get where you win this appeal, but then you lose that summary judgment. And I'm just trying to try to figure out, you know, what are the facts that are coming in this case? That's a judge use of force use of state state force. I'll say this in answering that when you, when you, the color of law is purely factual and they are different facts in different cases. So when you look at boost those versus Martini club, you can see Mr. Gomez has is able to distinguish between that from the actions of officers making the arrest. Then you have Smith versus Kuru, which clearly shows officers Miran dies. Mr. Gomez may fall in the middle, but that does not mean he doesn't meet his burden. All right. So if I may ask one quick question. Yeah, sure. Go ahead. Good start. Um, counsel, maybe we can, my question relates to something you started out with. So maybe we've come full by, I believe the defendant Goldman, uh, of record, uh, where he had been reported. And one of them though was, and not that these are okay, but there was a damage to property and an illegal strip search. Uh, how do those claims, I mean, those claims seem very dissimilar to what happened here and I'm not trying to put them on a scale of, of how heinous they are, but this seems like an event that is much more egregious. Yeah. In terms of the bodily injury, you put a photograph in the complaint. So how do those two claims support a Monell claim? They seem very dissimilar. Well, judge, thank you for that question because we put a lot of thought into that as well before we, um, you know, filed a complaint and on its face, it does seem like it may just be incidences of, of bad doing, but it is the details within the criminal damage to property. Defendant officer had, but a car's mirror because he was mad because the car came too close to him in the strip searching situation. It wasn't just simply a strip search. Your Honor that it was, it was borderline and invasive cavity search out in the open where defendant officer used his hand and I'll, I'll stop there, you know, to not going to further D. So this officer has shown that his actions only escalated. And that goes right back to Monell in the department of justice report and also the independent remonitor review, which said that it was the training, the protection, the, the, the code of blue, this officer on probationary period with two incidents should have been taken off of the streets and reprimanded and put into some type of training. And we believe this is what led to him, to he and the other defendant officer beating Mr. Gomez, not because they hoped or they wished, but they knew nothing would happen at all to them. All right. Well, thank you, Mr. Senator. You've answered our question, but you've reserved some rebuttal time. We'll hear now from the city, Mr. St. Raymond. May I please the court. This is Corwin St. Raymond. I'm on behalf of the city of New Orleans. This matter was dismissed by the district court properly. Gomez's complaint failed to state a claim against the city of New Orleans and dismissal was appropriate under rule 12. The suit as you got, you all know, was filed after a bar fight. This bar fight occurred at three people were involved in the fight. Mr. Gomez, Mr. Sutton, and Mr. Gallman. At the time of this fight, Mr. Gallman and Mr. Sutton were both NOPD officers. However, when you call this a fight, are you alleging, are you suggesting that Gomez was participating in this? Or I thought at least as a complaint, as we have to take it, this was an assault. I hate to, I hate to go outside the complaint because we're in a rule 12 motion, but there was some conversation in the previous argument regarding how the second fight occurred. Mr. Gomez, well Mr. Sutton and Mr. Gallman left the bar after the fight was broken up by some bystanders. Mr. Gomez got in his vehicle and drove past his street in the direction of Mr. Gallman and Mr. Sutton. So I suspect if discovery was commenced, there's a strong argument that at that point Mr. Gomez became the aggressor. And he, and my understanding from the reports in this matter, there was Mr. Gomez went into his again and beat him, or got the best of him. I don't know. Everything you're arguing counsel seems to suggest that there's a need to do discovery. You're going, you just said you have to deal with the amended complaint. Everything you're, everything you're telling us right now seems to be the subject of discovery. Yeah, this is your, this is your opposition to summary judgment is what you're telling us. Right. You're, you're absolutely right, but you, you brought up whether or not, um, Judge Ho, you brought up whether or not Mr. Gomez engaged in the fight. I was just giving you a little bit of flavor as to what would come out in the event that this did proceed to discovery. I don't think the matter needs to go to discovery. I believe the question you asked went to the question of whether it was a fair characterization of incident number one as a quote fight. I mean, that's, that was the question as you took it as an open door to say a whole lot more than that. And you may have stepped in doing so you may have stepped in it because it does sound like all the more reason, Hey, you might win on summary judgment, but we had 12 and six, his question was, was it fairly characterized as a fight versus, you know, he was beat by these two people putting aside the second incident. And that's, that's, that's where we were, but then we ended up in the street. So I'm, and I apologize. Um, I think that the complaint leaves a few facts out. I don't think that there's any facts that were pled that get us past a rule 12 motion. Um, I think that the case was appropriately dismissed based upon what was pled. Mr. Gomez was aware of every single fact of that night. He was there. Uh, he knew what Mr. Gallman and Mr. Sutton did. He, he pled his best case. Um, so let's talk about the complaint then. I think we're resetting the conversation to focus on the complaint. So what I see are the following allegations. And so I want to, I want to get your responses or why this is not enough to get past 12 be six. There's numerous allegations of acting as a police officer. There's a direct order to stop. Uh, there's Gomez's belief that he was not free to leave, even though every human being I would think would want to flee their attacker if they were allowed to leave. Uh, and there's no official, uh, military, uh, more former soldier. Uh, the word arrest has been used. The word police hold is used. And then there's the, of course, the, uh, the fact that after he was unconscious, uh, there were all these efforts as officers to use their station in order to, uh, get away with it. Why is that not enough to get past 12 be six? Well, um, because a number of those statements are extremely conclusory. The use of the word stop, for instance, there is no training. There is no, there's no plead, uh, pleading or fact alleged in the complaint that indicates that NOPD officers are trained on the use of the word stop. Um, but when you say conclusory, that's a, that's an important legal term, right? I mean, yes, we don't, we don't accept, you don't get past 12 be six by simply saying color of law as required under 1983, you have to allege facts. Aren't these facts? Well, I'm my, my statement is, is that the, the, the, the fact of use of the word stop is a police term that would lead one person to, to, to believe that they were being engaged by a police officer. So what are the allegations that are missing? Cause obviously there, there must be a situation like this that would get past 12 be six. What would you require? What would you have us require a complaint to say that this complaint does not have? Well, I think if they, if, if the officers or the off duty officers identify themselves as police officers, he said, if, when he said, stop, he said, you need to stop. I'm an NOPD officer. I'm going to handle this and I'm going to take care of the dispute between you and Mr. Sutton or Mr. Gallman, whoever it was that made the command of stop. I don't think using the word stop rises to the level of, of a police officer command. These two guys, one of the individuals took Mr. Gomez's hat from his head and left the bar. The other, the other individual Sutton intervened, presumably to stop any further escalation of the incident. And he asked Mr. Gallman, hold on, stop. Let me see what I can do here. When he's talking to Mr. Mr. Gomez, Gallman comes up and this is in the complaint and he punches him in the face, punches Gomez. Can you talk to me about the police hold and the effecting of an arrest? Those are in the complaint as well. Right. Okay. So the after, okay. So before we even get there, there's the out of the vehicle. First of all, again, it's again, another conclusory statement. There is no training that's identified that indicates that an NOPD officer should step in front of a vehicle. In fact, I would suggest that that would be completely wrong. I mean, there's to put your body in front of the vehicle. As far as the hold is concerned, uh, that's after they engage in the fight and fought him on the street and they called the police. I guess they thought, and I don't know what they thought, but I presume that they wanted to call the police because they had just beat this guy up and, uh, they, they stayed for the police to show up. Now, now one thing is certain, both of these guys were investigated by the NOPD as soon as they arrived. They were the district court took judicial notice that they were both terminated within 24 hours of this incident. Uh, they were both charged with crimes. Um, so as far as them, there being a blue coat of silence and a coverup by the NOPD, that's the facts do not support that. Uh, and so let me ask, maybe this is a, uh, a more general way of asking, is there any case law that you can cite us to, uh, that establishes a minimum pleading standard for under someone acting under color of law? There's got to be legions of cases where an officer, let's say is in a bar and has handcuffs or a sidearm or some other indicia of officers disclosed. And it doesn't seem like it's disputed that they said, look, I'm NOPD, you need to comply or so on and so forth. So is there any case law that can help us define what the minimum threshold is insofar as acting under color of law, or is that just sort of a case by case, uh, evaluation that depends on the facts, which would then suggest discovery? Well, judge, I certainly think that it is a case by case evaluation. Um, I don't think that there necessarily has to be discovery. There's case law that supports, uh, a rule 12 motion, uh, and, and the fifth circuit upholding a rule 12 motion when the, when a plaintiff fails to plead a color of law. I mean, that's, that's, that seems to beg the question though. I mean, we wouldn't be here if they say it, we're NOPD, yada, yada, here's my badge, dada, dada. I mean, if that had happened, we wouldn't even be sitting here because, you know, he would be axiomatic. They said they were the police. So, I mean, that can't be the standard. Cause if that were, if that were facts in this case, you know, I don't think we'd be here anyway, because it's there. So as judge, it can't be the extreme is the only example. Um, there has to be some, and without, and again, we're at 12 B. And so with pleading, I mean, there's only so much you can plead from the incident, uh, to make out the case. So, you know, you, you rely heavily on a number of cases. Yes. Each one of them are different, but the reality is they weren't police officers. Yes, they were, they were police officers, but they were not acting with the air of authority of a police officer. So they were police officers. So because they were off duty, their manner, their tone, their temperament, their talk, it just cut off like you cut your phone off. So, I mean, in the heat of a fight, their offices, I mean, like us as judges, I mean, we're judges 24 seven, um, and other people. So they're, they're officers they're in there. So no, they don't have the uniforms and so forth. So it's not a fair allegation that the tone, the temperament, the words used, et cetera, by people who are police officers would be at least enough to get you past 12. He said, well, judge, I, you just mentioned judges and I'd point you to a fifth circuit case, uh, by the name of a web versus Morella. And that was a, that was a case that was dismissed on a rule 12 motion, uh, where an individual went to the private law office of that judge. Um, they engaged in a fight and, uh, the, the, the, the judge filed a rule 12 motion saying he didn't, he didn't act under the color of law. He was acting in his personal capacity. Um, as a citizen, the, the, the court dismissed it, uh, as under the color for a failure to state claim under the color of law and the fifth circuit upheld it. Um, I think that, um, I do, was there any allegation in that case that the, that the, uh, plaintiff was not free to leave and did not feel free to leave? Oh, no, no, no, no, no. I mean, it's, it's totally different. So, I mean, can we deal with that aspect of it? Sure. Sure. I mean, let's be very clear. I think this is a very close case on the 12 B six B and the reason why it's not devastating one way or the other is I, I'm trying to figure out why is it that Gomez believed he was not free to leave? That is a striking statement from somebody who was a commended soldier. Well, what are we supposed to do with that allegation? I would point to, to Gomez is him being a soldier and this other, this, this incident started out as pled regarding military service. Uh, the, one of the, one of the off duty officers was the idea. So your theory is that he's sort of unusually docile. Is that sort of the idea? Not, not docile, but like unusually obedient. If somebody tells him to stop, it doesn't matter how obviously private they are and they're not at all a cop. He will just simply listen to that order no matter who it is. Correct. Correct. And I do think that the boost dose cases is, is instructive. I mean, that case talks about that it was pled that these officers joined arms as a SWAT, as a SWAT team and blocked it, blocked the plaintiff's way and acted as police officers, uh, to beat this guy. Um, that case was dismissed on a rule 12 motion. It was upheld by the fifth circuit. Right. But there, the guy was running away, wasn't he? He was, I mean, they used physicality to stop him, but, but he didn't feel as I understand boost dose. And you tell me if there's a statement in there that, that I'm free to leave, you must stop. Uh, it was just simply, we're going to beat you and we're going to block you from leaving. But the very reason you block somebody from leaving is because you have no authority otherwise to block them from leaving. Right. I would agree with that. I mean, boost dose is different from this case, from the standpoint of there was a statement of, of to stop. But again, I go back to the authority with the word stop. This is someone who's engaged in that you're a police officer. Uh, we've all probably used the word stop before. It doesn't mean that you're a cop. Um, and, and to, to reach the conclusion, Gomez reached the conclusion that these guys were cops post incident. I do not, I don't believe the facts show that he reached that conclusion during the incident. Oh yeah. If you're able to that, again, that sort of going back to the summary judgment discussion, right. There's a pleading that they were acting like police officers. You will have the chance if it goes to summary judgment and trial, you'll have the chance to refute that and to say they weren't acting like police officers at all. But the point is that's in the complaint. Sure. Well, I only have 35 seconds, but I would like to address, uh, the also, although the court dismissed this for a claim, he did not, he did not allege a policy practice custom of the NOPD that, that, that this incident would, it was, was promulgated by the NOPD or was supported these types of activities while they were on duty. Right. But there's nothing in the complaint that, that speaks to training a policy of custom of NOPD that gives rise to a constitutional claim against the city of New Orleans. Uh, and so in our motion to dismiss, we relied heavily on, uh, pursuing the dismissal by way of the Monell claim. Uh, uh, the court didn't, did not really address the Monell claim because, uh, the judge indicated that he didn't need to get to the Monell claim because he found that there was not enough to satisfy that they were in a de novo review can, can look at our, our motion to dismiss, uh, and determine and look at the complaint to determine whether or not there was a sufficient pleading under Monell too. So I don't think that this case fails just for not pleading under the color of law. I think it fails for failing to plead a claim under Monell against the city of New Orleans. All right. Thank you, Mr. Raymond. I think we've got your argument. Appreciate it. Thank you. All right. We'll hear from Mr. Levinson. Uh, good morning, Judge. My name is Lenny Levinson. I represent the defendant Spencer Sutton. In this case, I'd like to just call the court's attention to two things that the district court judge said in connection with granting the motion to dismiss. He said, and I'm summarizing, there are no allegations of specific actions by Goldman or Sutton that would lead to the conclusion either was acting as a police officer. He went on to say that Gomez's allegations indicate that Gomez, excuse me, that Goldman and Sutton took no steps that would reveal they were acting as police officers as opposed to private citizens or off duty officers in their personal capacities. And I want to remind you that in response to one of the questions that were asked of plaintiff's counsel, he responded today that there are no allegations in the amended complaint that these two identified themselves as police officers. I don't think that if someone tells you to stop, that you can assume that they're a police officer. If someone tells me to stop and he's bigger than me and he's already beat me up and he has the ability to beat me up again, I'm going to stop. But that doesn't mean he's a police officer. He's made out to be. One of the allegations that plaintiff's counsel highlighted from the amended complaint, such as in paragraph 26, that Mr. Sutton called for backup. I mean, nobody calls for backup usually except for someone in law enforcement. Paragraph 27, that they called, they identified themselves to NOPD dispatch as officers, that they sent a signal or used a code for potential responding officers, that it was an emergency, that the officer was in need of assistance, and that the NOPD investigated the incident. In addition to the fact that they asserted some preventing him from leaving. But let's put that aside. What about the call for backup in the identification to dispatch as officers? Well, Judge, I'm going back to what the district court said and noted again. I'm talking about the amended complaint. Before we get to what the district court said, the amended complaint is what the district court considered to rule. Well, I understand that, Judge, but when they call for backup and identified themselves as police officers, the beating is over. They're calling police to come to the scene. Mr. Gomez is unconscious. He doesn't know that they just used a secret number or a code or something to call the police out. He was unconscious. They say in the complaint, he was unconscious, and that was noted by the district judge, that it's over at that point. There's nothing in the complaint that says, when they tell him to stop or whoever told him to stop on the patio, that they did that as a police officer, as opposed to a bully. Okay, but let's go back to the second incident. He was in a car at the time, right? Yes, sir. So what person would stop and allow themselves to be beaten again by someone who they didn't think were cops? I think a person who's driving a truck or a car and somebody stands in front of them and blocks his ability to leave. I don't know that I'd run over somebody and take that chance. Well, you might not run the person over because you don't want to hurt somebody, even your assailant, but didn't he go further than that? I thought he did what he was ordered. He was ordered to exit the vehicle and he exited the vehicle. I might not have run the person over, but I'm sure he's not going to exit the vehicle. I'm going to wait for you to come across to the side and then I'm going to leave. I'm going to drive away. Again, if we're looking at just the 23 and 24. All right. When they said they ordered him out of the truck, they don't say he did it as a police officer. They just said they ordered him out of the truck. Oh, come on. The previous paragraph says acting like a police officer. I think you're being a bit persnickety there. Well, I don't know what acting like a police officer means. I mean, I know what he intend by it, but in other words, I think you could order me out of my car and not a police officer. Whether or not I comply is a different story. No, no, I totally agree. These allegations may or may not hold up. The point is, is this enough to at least get to a fact receipt? Well, of course we hope they're not. No, I understand. I understand your position. All right. You get my point is at the end of the day, I get that this is not the strongest pled case on color of law. Believe me, I get that point. The question in my mind and the really the deciding question is, is it enough that he's already been beaten by these people? He's in his truck, so he's protected by the steel and then the other protections of being in a vehicle, and yet he feels like he has to comply. That suggests at a minimum a subjective understanding that they were police officers. Well, a subjective understanding that they were going to beat him to the point, Judge. But I also think that this could very simply be cured if there had been an allegation that at any time they showed a badge, a gun, said I'm a police officer, anything. Well, I'll still say if we had those facts, we wouldn't be here. I mean, I think you're pushing the point. You know, I mean, if they showed the badge and said all that, you wouldn't need to and say, well, you know, if they showed his badge and they said to a police, well, this case, we wouldn't be here. We're obviously at a point beyond it. You still haven't for me addressed, you know, really the point. I mean, when they call the police off and use the code and all that way, they still step back into the role that they were. You want to just distance yourself from what they did do. That's a less than a complaint. We're on 12 B6. But in any You've exhausted your time. So we're going to go back to Mr. Adams on rebuttal. Judge, I want to pick up on on Judge Ho's last point. And I want to say this. The only reason that Mr. Gomez may not have been able to say that they were identified as officers was because he was beat unconscious. No citizen would have been able to walk away from that incident having being the aggressor. These officers, it was mentioned by counsel that these officers were arrested and it was cited by the court. Judge, I want the court to know that these officers never spent any time in jail, received the lightest of the lightest. And this directly goes when I return back to the Moneo arguments. How do we know through discovery that we won't find that there are some trainings on what do you do when you're ordering a stop? How loud do you get? Do you switch your hand? Do you order a person out? How do we know through discovery that we won't find that defendant officer with the two prior incidents had a record that should have flagged him from being hired in the first place? These officers were on probationary periods. That gets us to Moneo as well as the color of law. If this case is distinguishable from Bustos in that there was an arrest made, now where it might not meet as high as Carruth, it most certainly touches the points to survive a 12-B. And with that, I'll rest, Your Honor. All right, Mr. Seddon, we appreciate your argument. And to Mr. St. Raymond, Mr. Levinson, we appreciate your briefing and argument in this case. It's helpful to the panel. That concludes the arguments in this case, and the case will be submitted. Thank you, gentlemen. You're excused. Thank you. Thank you. All right, got the next group ready, Ms. Pham? Ms. Pham, you got the next group ready? Oh, there you are. Okay.